IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HERMAN JENNINGS, | CASE NO. 1:19-CV-01678-JRA |
| Plaintiff, | JUDGE JOHN R. ADAMS |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN CHAE HARRIS, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

## INTRODUCTION

On July 23, 2019, Petitioner Herman Jennings, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). Respondent Chae Harris, as Warden of the Lebanon Correctional Institution (hereinafter "the State"), filed an Answer/Return of Writ on December 3, 2019. (ECF #6). Mr. Jennings did not file a Traverse Brief.

The District Court has jurisdiction over the Petition under § 2254(a). Pursuant to Local Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation (non-document entry of October 2, 2019), and was reassigned to me pursuant to General Order 2022-03 (non-document entry of February 15, 2022).

For the reasons below, I recommend the Petition be **DENIED** as to the First Ground for Relief and **DISMISSED** as to all remaining Grounds for Relief. I further recommend Mr. Jennings not be granted a certificate of appealability.

## Factual Background

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

In its opinion affirming Mr. Jennings' convictions, the Ohio Eighth District Court of Appeals summarized the underlying facts as follows:

> {¶ 3} The case proceeded to trial, and the jury heard evidence and testimony about a robbery gone wrong where Jennings's accomplice was shot and killed by one of the victims. The two attackers, dressed in black with their hands and heads covered, attempted to rob two victims in the driveway of their house. As the victims sat in a vehicle about to leave, the driver-side door was opened by one of the assailants. One victim was dragged from the driver's seat and struck on the head with a metal object. During the attack, the victim was able to retrieve a legally possessed firearm from the driver-side door and shoot one of the masked assailants, later identified as Waymone Williams. Williams died from his wounds.

> {¶ 4} Jennings ran after the other victim, who was trying to retreat into the house. Jennings grabbed the victim's purse, causing her to fall to the ground, and fled the scene with it. After securing the scene of the crime, the police discovered the stolen purse and its contents spread across the yard. Additionally, they discovered a black "doo-rag" and a pair of latex gloves. Each glove and the doo-rag contained DNA belonging to Jennings.

> {¶ 5} The police also discovered a vehicle in the area that was titled to Williams's mother. The keys found on Williams's body belonged to the vehicle. Inside the vehicle was a cell phone, that also belonged to Williams's mother. According to the police, the last call made was approximately 90 minutes before the attack, the call being made to a contact named "HERM."

> {¶ 6} The jury found Jennings not guilty of aggravated murder, two counts of felonious assault, and one count each of aggravated robbery, robbery, and having weapons while under disability. However, the jury found Jennings guilty of murder,

one count of aggravated robbery, and three counts of robbery, each with the repeat violent offender specification.

{¶ 7} Jennings was sentenced to 15 years to life on the murder count. Two of the robbery counts merged with the aggravated robbery, with the state electing that he be sentenced on the aggravated robbery charge. The court imposed a ten-year sentence on the aggravated robbery count. The aggravated robbery and murder sentences were ordered to run concurrently. The court imposed a seven-year sentence on the remaining robbery charge, to be served consecutively to the murder and aggravated robbery counts, for a total of 22 years to life in prison.

(ECF #6-1 at PageID 265-67; *see also State v. Jennings*, 100 N.E.3d 93, 95-96 (Ohio Ct. App. 2017),

*appeal not allowed*, 96 N.E.3d 299 (table)).

## PROCEDURAL HISTORY

### State Court Conviction

On December 11, 2013, the Cuyahoga County Grand Jury returned a sixteen-count indictment. (ECF #6-1 at PageID 88-102). The charges against Mr. Jennings were as follows:

- **Count 1**: Aggravated Murder (Ohio Rev. Code § 2903.01(B)), with one- and three-year firearm specifications and a repeat violent offender specification (RVO);

- **Count 2**: Murder (Ohio Rev. Code § 2903.02(B)), with one- and three-year firearm specifications and an RVO;

- **Counts 3 and 4**: Kidnapping (Ohio Rev. Code § 2905.01(A)(2)), with one- and three-year firearm specifications and an RVO;

- **Count 5**: Aggravated Robbery (Ohio Rev. Code § 2911.01(A)(3)), with one- and three-year firearm specifications and an RVO;

- **Count 6**: Aggravated Robbery (Ohio Rev. Code § 2911.01(A)(1)), with one- and three-year firearm specifications and an RVO;

- **Counts 7 and 8**: Robbery (Ohio Rev. Code § 2911.02(A)(2)), with one- and three-year firearm specifications and an RVO;

- **Counts 9 and 10**: Robbery (Ohio Rev. Code § 2911.02(A)(1)), with one- and three-year firearm specifications and an RVO;

3

- **Count 11**: Felonious Assault (Ohio Rev. Code § 2903.11(A)(1)), with one- and three-year firearm specifications and an RVO;

- **Count 12**: Felonious Assault (Ohio Rev. Code § 2903.11(A)(2)), with one- and three-year firearm specifications and an RVO;

- **Counts 13 and 14**: Theft (Ohio Rev. Code § 2913.02(A)(1));

- **Count 15**: Petty Theft (Ohio Rev. Code § 2913.02(A)(1)); and

- **Count 16**: Having Weapons Under Disability (Ohio Rev. Code § 2923.13(A)(2)).

(*Id.*). The case proceeded to trial and on August 27, 2015, after the State rested its case, Mr. Jennings made a motion for judgment of acquittal under Ohio Rule of Criminal Procedure 29. (*Id.* at PageID 154). After the trial court denied Mr. Jennings' Rule 29 motion, the defense rested. (*Id.*). The State then withdrew Counts 3, 4, 13, 14, and 15. (*Id.*). The trial court denied Mr. Jennings' renewed Rule 29 motion and sent the jury to deliberate. (*Id.*).

On August 31, 2015, the jury found Mr. Jennings not guilty as to Counts 1, 5, 8, 11, 12, and 16, and guilty as to Counts 2, 6, 7, 9, and 10, all with RVO specifications. (*Id.* at PageID 156-58). On November 19, 2015, the trial court sentenced Mr. Jennings to fifteen years to life on Count 2, to be served concurrently with ten years on Count 6 (merged with Counts 7 and 9), and seven years on Count 10, to be served consecutively, for a total of 22 years to life. (*Id.* at PageID 159-60).

**Direct Appeal**

On September 7, 2016, the Eighth District granted Mr. Jennings' motion for leave to file a delayed appeal and for appointment of counsel. (*Id.* at PageID 202). Through counsel, Mr.

Jennings filed his Appellant's Brief on December 19, 2016, alleging the following assignments of error:

    I.      The discharge of a juror during deliberations without legal justification and without a hearing violated Mr. Jennings's right to a fair jury trial under the Sixth and Fourteenth Amendments of the U.S. Constitution; the Ohio Constitution and Crim R 24(C).

    II.     The playing and admission of Tim Peak's video statement to the jury violated Evid. R. 612, the Due Process Clause of the Ohio and federal Constitutions and well-established Ohio Supreme Court case law.

    III.    The execution style killing of the victim by Mr. Peak was not foreseeable under Murder (B) of Ohio law and the manifest weight of the evidence mandates a new trial.

    IV.    The admission of litigation records disguised as business records was in error and allowed improper hearsay to be considered by the jury in violation of the Evidence Rules and Due Process under the Sixth and Fourteenth Amendments of the federal Constitution and Article I, Section 10 of the Ohio Constitution.

    V.     The trial court erred in denying a <u>Batson</u> challenge when it improperly applied the three-step process established by the U.S. Supreme Court.

    VI.    The Court's failure to instruct on "Confirmation Bias" prevented Jennings from have [*sic*] a fair trial and Due Process under the Fourteenth Amendment of the federal Constitution and Art. I, Section 10 of the Ohio Constitution.

    VII.    Counsel was ineffective under the federal and Ohio Constitutions and the Sixth and Fourteenth amendments of the federal Constitution/Strickland when no bias confirmation jury instruction was requested.

    VII.    The cumulative effects of the errors in this case detailed in Assignments of Error I-VII denied [Mr.] Jennings a fair trial and Due Process under the Fourteenth Amendment of the federal Constitution and Art. I Sec. 10 of the Ohio Constitution.

(*Id.* at PageID 207). The State filed its Appellee's Brief on February 10, 2017. (*Id.* at PageID 231-55).

5

On October 17, 2017, the Eighth District granted Mr. Jennings's motion to withdraw his second assignment of error. (*Id.* at PageID 262). On October 19, 2017, the court issued its Journal Entry and Opinion affirming the trial court's judgment in all respects. (*Id.* at PageID 263-85; *see also Jennings,* 100 N.E.3d at 93).

On December 4, 2017, Mr. Jennings, through new counsel, filed his Notice of Appeal in the Ohio Supreme Court, seeking a discretionary jurisdictional appeal on the basis that his case "raised a substantial constitutional question, involves a felony, and raises an issue of public or great general interest." (ECF #6-1 at PageID 291-92; *see also* Ohio Supreme Court Rule of Practice 5.02(A)). His Memorandum in Support of Jurisdiction asserted one Proposition of Law:

> When a juror informs the court, during a recess in deliberations, that he or she wishes to be excused from service, and a criminal defendant requests an in-court inquiry of that juror be held, the defendant's constitutional rights are violated when the court declines to allow such an inquiry and replaces the juror with an alternate.

(ECF #6 at PageID 294). The State filed a Memorandum in Response on December 14, 2017. (*Id.* at PageID 327-33). On April 25, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4). (*Id.* at PageID 334; *State v. Jennings*, 96 N.E.3d at 299).

Mr. Jennings did not file a petition for a writ of certiorari to the Supreme Court and his time for doing so expired on July 24, 2018. *See* Sup. Ct. R. 13. Mr. Jennings placed this *pro se* Petition in the prison mail system on July 15, 2019, making it timely commenced in this Court. (ECF #1, PageID 15; *see* 28 U.S.C. § 2244(d)(1)(A); *see also Bronaugh v. Ohio,* 235 F.3d 280, 283-84 (6th Cir. 2000) (concerning § 2244(d)(1)(A) and a state court direct appeal, the one-year statute of limitations does not begin to run until the day after the petition for a writ of certiorari was due in

the Supreme Court). The State acknowledges the timeliness of Mr. Jennings' filing in this Court.

(ECF #6 at PageID 36).

**FEDERAL HABEAS CORPUS**

Filed *pro se*, Mr. Jennings' Petition sets forth eight grounds for relief, as follows:

**Ground One**: Whether the discharge of a juror during deliberation without legal justification and without a hearing violated Mr. Jennings's right to a fair trial under the Sixth and Fourteenth Amendments of the U.S. Constitution; the Ohio Constitution and Crim. R. 24(C).

**Ground Two**: Whether the playing and admission of Tim Peak's video statement to the jury violated Evid. R. 612, the Due Process Clause of the Ohio and federal Constitutions and well-established Ohio Supreme Court Case law.

**Ground Three**: Whether the execution style killing of the victim by Mr. Peak was not foreseeable under murder (B) of Ohio law and the manifest weight of the evidence mandates a new trial.

**Ground Four**: Whether the admission of litigation records disguised as business records was in error and allowed improper hearsay to be considered by the jury in violation of the Evidence Rules and Due Process under the Sixth and Fourteenth Amendments of the federal Constitution and Article I, Section 10 of the Ohio Constitution.

**Ground Five**: Whether the trial court erred in denying a Batson challenge when it improperly applied the three-step process established by the U.S. Supreme Court.

**Ground Six**: Whether the Court's failure to instruct on "Confirmation Bias" prevented Jennings from having a fair trial and Due Process under the Fourteenth Amendment of the federal Constitution and Article I, Section 10 of the Ohio Constitution.

**Ground Seven**: Whether counsel was ineffective under the federal and Ohio Constitutions and the Sixth and Fourteenth Amendments of the federal Constitution/*Strickland* when no bias confirmation jury instruction was requested.

**Ground Eight**: Whether the cumulative effects of the error in this case detailed in Assignment of Error I-VII denied Jennings a fair trial and Due Process under the Fourteenth Amendment of the federal Constitution and Article I, Section 10 of the Ohio Constitution.

(ECF #1 at PageID 4-12). Mr. Jennings requests that the Court issue a conditional writ of habeas corpus ordering his release if he is not tried within 90 days of this Court's order. (*Id.* at PageID 15).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 governs Mr. Jennings's Petition for writ of habeas corpus. *Lindh v. Murphy,* 521 U.S. 320, 336 (1997). The AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone,* 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

The AEDPA provides that an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker,* 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003). It includes

8

"the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed. *Williams,* 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams,* at 407. The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state law and state procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and its rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington,* 562 U.S. at 102-03. To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

## PROCEDURAL BARRIERS

Before a petitioner's federal habeas claims are reviewed on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and

procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States,* 532 U.S. 374, 381 (2001).

**Exhaustion of Available State Court Remedies**

A court may not grant a petition for habeas corpus unless it appears that the petitioner has exhausted available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such state process ineffective to protect the rights of the petitioner. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all  claims to the highest court in the state in which the petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default, discussed more fully below, rather than exhaustion applies. *Id.*

**Procedural Default**

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Id.* First, procedural default of a claim occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether

the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for [his] failure to follow the rule and that [he] was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted by the petitioner failing to raise it in state court and pursue that claim through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally default." *Id.*

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). "The cause standard in procedural-default cases requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise a claim in the state courts." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S.

446, 451-52 (2000); *see also Murray*, 477 U.S. at 489 ("Ineffective assistance adequate to establish cause for procedural default of some other constitutional claim is itself an independent constitutional claim. And ... the principles of comity and federalism that underlie our longstanding exhaustion doctrine ... require that constitutional claim, like others, to be first raised in state court. '[A] claim of ineffective assistance,' ... generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'").

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A "fundamental miscarriage of justice" occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A valid actual innocence claim must be supported by new evidence not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Id.* at 315. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

**Federal Habeas Claims Based on Alleged Errors of State Law**

The federal habeas statute, by its own terms, restricts the writ to state prisoners in custody in violation of federal law. 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-

law questions." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). To the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted. *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990). A claim for federal habeas relief based solely on the ground of alleged violation of state law is properly dismissed by the federal habeas court as non-cognizable. *Estelle,* at 67-68; *Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007).

However, a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the denial of "fundamental fairness" at trial. *Estelle,* 502 U.S. at 67-68; *see Rivera v. Illinois,* 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness in a criminal trial.'") (quoting *Spencer v. State of Texas,* 385 U.S. 554, 563-64 (1967)). The Supreme Court "very narrowly" defines the category of infractions that violate the "fundamental fairness" of a trial. *Bey,* 500 F.3d at 522. Such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Bey,* 500 F.3d at 521 (quoting *Montana v. Egelhoff,* 518 U.S. 37, 43 (1996)). The petitioner bears the burden of showing a violation of a principle of fundamental fairness. *Id.*

DISCUSSION

**Ground One:**

> **Whether the discharge of a juror during deliberation without legal justification and without a hearing violated Mr. Jennings's right to a fair jury trial under the Sixth and Fourteenth Amendment of the U.S. Constitution; the Ohio constitution and Crim. R. 24(C).** (ECF #1 at PageID 4).

With respect to his First Ground for Relief, Mr. Jennings did not file a Traverse or otherwise offer argument or support for this claim. To the Eighth District, Mr. Jennings claimed

14

the trial court violated his right to a fair trial by excusing a juror who failed to return for the second day of deliberations. (ECF #6-1, PageID 213). The bailiff informed the trial court that the missing juror called the bailiff and claimed a work conflict. (*Id.*). Defense counsel objected to releasing the missing juror from continued service and demanded a "minimum inquiry" to determine if the employment reason was true, and to determine the juror was not being bullied by other jurors. (*Id.*). This second inquiry stems from the first day of juror deliberations, where the jurors posed questions to the trial court suggesting the jury was divided as to whether Mr. Jennings was at the crime scene. (*Id.*).

The appellate court addressed the claim in Ground One as follows:

{¶ 9} In Jennings's first assignment of error, he claims the trial court created a structural error by replacing a juror during deliberations, or in the alternative, that the court was required to conduct a hearing to ascertain the reason for the juror's disappearance. According to Jennings, the replaced juror refused to convict him and that was the reason for the juror's refusal to continue deliberations. He bases his argument on the fact that, at one point in the deliberations, the jury asked the trial court: "What happens if we're in disagreement about all of the counts, because we are in disagreement as to whether the defendant was even proven to be on the scene that night." The trial court answered tersely, with the consent of all parties, telling the jury to "keep deliberating." Jennings's argument is entirely based on federal law and mere speculation.

{¶ 10} Under Ohio law, "a trial judge is empowered to exercise 'sound discretion to remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty is impaired.'" *State v. Brown*, 2d Dist. Montgomery No. 24541, 2012-Ohio-1848, ¶ 46, quoting *State v. Hopkins*, 27 Ohio App.3d 196, 198, 27 Ohio B. 235, 500 N.E.2d 323 (11th Dist.1985). (Other citations omitted.) "'[S]ound discretion has long meant a discretion that is not exercised arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.'" *Woodards v. Cardwell*, 430 F.2d 978, 982 (6th Cir.1970).

{¶ 11} Crim.R. 24(G) and R.C. 2945.29 govern the removal and replacement of jurors during criminal trials. *State v. Zaragoza*, 2d Dist. Montgomery No. 26706, 2016-Ohio-144, ¶ 18, citing *State v. Cunningham*, 2d Dist. Clark No. 10-CA-57, 2012-

Ohio-2794, ¶ 45. R.C. 2945.29 permits a court to replace a juror with an alternate "[i]f, before the conclusion of the trial, a juror becomes sick, *or for other reason* is unable to perform his duty[.]" (Emphasis added.) "[T]he substitution of an alternate juror for a regular juror for reasonable cause is within the prerogatives of the trial court and does not require the consent of any party." *State v. Gaines*, 8th Dist. Cuyahoga No. 82301, 2003-Ohio-6855, ¶ 38, citing *United States v. Warren*, 973 F.2d 1304, 1308-1309 (1992). Neither R.C. 2945.29 nor Crim.R. 24 requires the court to conduct a hearing to confirm the juror's inability to fulfill her service. Id. at ¶ 39.

{¶ 12} Crim.R. 24(G)(1) also allows the court to replace a juror after deliberations have begun. "If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." Crim.R. 24(G)(1). "'The purpose of such instruction is to negate any possibility of coercion or intimidation of the substitute juror.'" *State v. Sales-Hilton*, 9th Dist. Summit No. 26351, 2012-Ohio-5651, ¶ 16, quoting *State v. Elersic*, 11th Dist. Lake Nos. 2000-L-062 and 2000-L-164, 2001-Ohio-8787, citing *State v. Miley*, 77 Ohio App.3d 786, 791-793, 603 N.E.2d 1070, 603 N.E.2d 1071 (12th Dist.1991). The trial court followed the procedure set forth in Crim.R. 24.

{¶ 13} Tellingly, Jennings's entire argument is based on the proposition of federal law that erroneously removing a juror is structural error that requires a new trial. In support, Jennings cites federal cases that interpret Fed.R.Crim.P. 23(b), for example, *United States v. Curbelo*, 343 F.3d 273, 278 (4th Cir.2003); *United States v. Hernandez*, 862 F.2d 17, 22 (2d Cir.1988); and *United States v. Brown*, 823 F.2d 591, 596, 262 U.S. App. D.C. 183 (D.C.Cir.1987). Fed.R.Crim.P. 23(b) deals with the removal of a juror and proceeding with an 11-juror panel, which has no corresponding state civil rule. Under Fed.R.Crim.P. 23(b), the court may only remove a juror in that instance for "good cause" because without that, structural error occurred. No such "good cause" requirement is required under Crim.R. 24(G)(1), the closest state analog that authorizes a court to remove and replace a juror after deliberations begin for any reason that precludes the juror from performing her obligations. Failing to return is a sufficient basis to remove a juror in Ohio. *State v. Gleason*, 65 Ohio App.3d 206, 210, 583 N.E.2d 975 (1st Dist.1989) (replacing a juror who failed to appear to avoid a delay in the proceedings is not an abuse of discretion); *Sales-Hinton* at ¶ 15 (court was left with "little choice" in replacing a juror with an alternate after juror refused to return to court). Jennings failed to support his argument with relevant authority as required under App.R. 16(A)(7). This alone is dispositive; any attempt on our part to reverse would require us to create and support arguments not advanced by Jennings.

{¶ 14} Even if we considered Jennings's arguments under Crim.R. 24(G)(1), we would have to resort to rank speculation because the record is silent as to the existence of a "holdout" juror or as to any conversations outside of the deliberative process that occurred between the jurors regarding the case – the juror being replaced contacted

the court's bailiff and another juror to explain that she had work obligations precluding her from returning to deliberations. We must presume regularity, but Jennings insists that we presume irregularity. In other words, without supporting evidence in the record, Jennings would have us assume that the trial court abused its discretion in replacing a juror by failing to ensure the deliberations were not compromised based on his speculative misgivings that cannot be easily dispelled by the record. Jennings is flipping the standard on its head.

{¶ 15} Nothing in the record indicates that any one juror, much less the juror actually replaced, prevented the jury from reaching a decision. Although there were several questions asked, none indicated that the jury was actually deadlocked and unable to resolve the disagreement. *See State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), paragraph two of the syllabus. Jennings's claim that the replaced juror was a holdout is mere speculation.

{¶ 16} Further, the reason for the juror's inability to complete her service was known: the replaced juror was unable to continue her service because of work responsibilities. The trial court, in exercising her sound discretion, accepted that excuse, noting that the jurors had been kept well beyond what was originally intended. The juror also contacted the court's bailiff, an officer of the court, reiterating what was already communicated to the other juror. Any delay associated with having the missing juror contacted a third time or issuing a bench warrant to be executed at her place of work to forcibly compel attendance could be considered impractical in light of the fact the panel had only deliberated for one day at that point.

{¶ 17} Most important, and contrary to Jennings's argument, jurors are not precluded from communicating with each other in general; they are only precluded from discussing the case outside the deliberation at the close of all evidence. As the trial court unambiguously instructed the jury in this case, "[m]ost important, ladies and gentlemen, you may not discuss the case among yourselves or with anyone else until all of the evidence has been presented and I've instructed you on the law and ordered you to begin your deliberations." Tr. 503:21-504:1. The fact that the jurors had a permissible conversation is not in and of itself error as Jennings suggests.

{¶ 18} To follow Jennings's logic, trial courts would have to conduct an inquisition into each and every conversation had by the jurors upon returning to court. Courts are not required to undergo such an inquiry. Jennings is asking us to presume that an irregularity occurred based on the fact of a permissible conversation having occurred — presumably encouraged by the state's improvident accusation that the jurors' conversation about attendance somehow violated the trial court's instruction not to discuss the case. The record indicates that the jurors' conversation about one having to return to work, did not violate the trial court's admonishment, which prohibited the jurors from discussing the guilt or innocence without all jurors present.

17

{¶ 19} Regardless, the black letter law in Ohio is unambiguous. A trial court does not abuse its discretion by replacing a juror who is unable to complete her service in order to avoid a delay in the trial process. *Gleason*, 65 Ohio App.3d 206, 210, 583 N.E.2d 975; *Sales-Hinton*, 9th Dist. Summit No. 26351, 2012-Ohio-5651, ¶ 15. Further, there is no requirement under Crim.R. 24(G) for a trial court to conduct an evidentiary hearing to corroborate the juror's reason for not appearing or to investigate each and every conversation jurors have outside the courtroom. *Gleason*. Jennings has not cited a single Ohio case supporting his interpretation of Ohio law. Based on the arguments as presented and the law as it exists in Ohio, Jennings's first assignment of error is overruled.

(ECF #6-1 at PageID 267-73; *see also Jennings*, 100 N.E.3d at 96-99).

Five months before the appeals court rendered its decision, Mr. Jennings filed a Notice of Supplemental Authority, citing *Remmer v. United States*, 347 U.S. 227 (1954), a case involving a juror who was offered money by a third-party in exchange for a verdict favorable to the defendant. (ECF #6-1, PageID 256-57). Mr. Jennings did not offer argument in relation to *Remmer*. The appellate court analyzed Mr. Jennings's claims in the context of state procedural law and addressed Mr. Jennings' citations to federal cases interpreting a Federal Rule of Criminal Procedure but did not provide an analysis of the constitutional issue.

"Where the state court disposes of a Federal constitutional claim with little-to-no articulated analysis of the constitutional issue, this circuit applies a modified form of AEDPA deference." *Hawkins v. Coyle*, 547 F.3d 540, 546 (6th Cir. 2008). Under the modified standard, "the court conducts a 'careful' and 'independent' review of the record and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of the law.'" *Vasquez v. Jones*, 496 F.3d 564, 570 (6th Cir. 2007) (quoting *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005)).

In *Remmer,* the Supreme Court clearly established that "a trial court, faced with an indication of jury bias, must conduct 'a hearing with all interested parties permitted to participate.'" *United States v. Owens,* 426 F.3d 800, 805 (6th Cir. 2005) (quoting *Remmer,* 347 U.S. at 230); *see also Smith v. Phillips,* 455 U.S. 209, 215 (1982) ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."); *Tanner v. United States,* 483 U.S. 107, 120 (1987) ("[A]n evidentiary hearing delving into allegations of juror misconduct is required only where 'extrinsic influence or relationships have tainted the deliberations.'"). Although a defendant "must do more than simply raise the possibility of bias" to receive a *Remmer* hearing, "a colorable claim of extraneous influence" is sufficient. *Owens,* 426 U.S. at 805.

Once a defendant raises a colorable claim of external influence, the trial court "must hold a *Remmer* hearing 'to afford the defendant an opportunity to establish actual bias.'" *United States v. Lanier,* 870 F.3d 546, 549 (6th Cir. 2017) (quoting *United States v. Davis,* 177 F.3d 552, 557 (6th Cir. 1999)). Generally, information is extraneous "if it derives from a source 'external' to the jury." *Warger v. Shauers,* 574 U.S. 40, 51 (2014). The Sixth Circuit has explained that "an external influence 'must either relate to the case that the jurors are deciding or be physically brought to the jury room or disseminated to the jury.'" *Thompson v. Parker,* 867 F.3d 641, 648 (6th Cir. 2017) (quoting *Smith v. Nagy,* 962 F.3d 192, 201 (6th Cir. 2020)).

During the first day of deliberations (a Friday), the jurors submitted questions indicating potential disagreement ~~about  Mr.~~about Mr. Jennings' presence at the crime scene. (ECF #6-3, PageID 1998). On Monday, all jurors save one returned for further deliberations; the missing juror informed another juror and the trial court's bailiff via telephone call that she would not be

19

returning due to an employment issue. (*Id.* at PageID 2002). The trial court noted the jurors had

served longer than anticipated and concluded the missing juror's excuse for not returning was

legitimate. (*Id.* at PageID 2002-03). Counsel for Mr. Jennings objected to the replacement of the

missing juror, noted the jurors' questions on the first day of deliberation showed some conflicting

views of the evidence, and requested a minimal inquiry "as to whether or not there was some sort

of manipulation or overpowering of [the missing juror's] will to the extent that there may be some

degree of jury misconduct." (ECF #6-3, PageID 2003-04).

Neither the circumstances surrounding the request for minimal inquiry, nor the request

itself, entitled Mr. Jennings to a *Remmer* hearing on juror bias because he did not allege a colorable

claim of extraneous influence. Because he raised an internal claim about the behavior of jurors,

there was no requirement for a *Remmer* hearing. *See United States v. Herndon*, 156 F.3d 629, 634-35

(6th Cir. 1998) (examples of internal influences include the behavior of jurors during

deliberations, the jurors' ability to hear or comprehend trial testimony, and physical or mental

incompetence of a juror) (citing *Tanner*, 483 U.S. at 118).

Based on the record and applicable law, I conclude the state court's decision was not

contrary to or an unreasonable application of Supreme Court precedent. Accordingly, I

recommend the District Court deny the claim in Ground One of the Petition.

**Ground Two**

> **Whether the playing and admission of Tim Peak's video statement to the jury violated Evid. R. 612, the Due Process Clause of the Ohio and federal Constitutions and well-established Ohio Supreme Court Case law.** (ECF #1, PageID 5).

As addressed above, Mr. Jennings presented this assignment of error to the appellate court

on direct appeal but withdrew the claim before the court decided the matter. (ECF #6-1, PageID

259-60). Additionally, this claim was not within the single Proposition of Law that Mr. Jennings included in his appeal to the Ohio Supreme Court. (ECF #6 at PageID 294). Therefore, no state court had the opportunity to consider and address the merits of this claim. Further, Ohio's *res judicata* doctrine now bars Mr. Jennings from bringing such a claim in state court. *State v. Perry,* 226 N.E.2d 104, 108 (Ohio 1967) (holding that claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*); *see State v. Combs,* 652 N.E.2d 205, 209 (Ohio Ct. App. 1994) (holding that post-conviction relief is not available by virtue of the doctrine of *res judicata* to address constitutional claims that could have been raised on direct appeal from the conviction and sentence).

"When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available . . . that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker,* 224 F.3d 542, 549-50 (6th Cir. 2000); *see Wainwright v. Sykes,* 433 U.S. 72, 80, 84-87 (1977). Having never presented this claim to any state court on direct appeal or in another other post-conviction petition to the state courts, Mr. Jennings has procedurally defaulted this claim.

Mr. Jennings cannot overcome procedural default as to Ground Two because he has not established cause for the default and prejudice resulting therefrom or that a fundamental miscarriage of justice will occur if the claim is not considered. In his petition, Mr. Jennings asserts appellate counsel was ineffective for not advancing Grounds Two through Eight on appeal to the Ohio Supreme Court. (ECF #1, PageID 5-6, 8-12). As explained above, ineffective assistance of appellate counsel may serve as cause to excuse procedural default, but that claim must be presented

21

to the state courts as an independent claim before it may be used to establish cause for a procedural default. *See Edwards,* 529 U.S. at 451-52. Mr. Jennings did not assert any such ineffective assistance of appellate counsel claim to the state courts.

Nor has Mr. Jennings established that a fundamental miscarriage of justice will occur if the claim is not considered. As explained above, a fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent," and must be supported by new evidence not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Murray,* 477 U.S. at 495-96. Mr. Jennings has not put forth any new evidence not presented at trial to support an argument that manifest injustice will occur if the claim is not considered.

Based on the record and applicable law, I conclude Ground Two is procedurally defaulted. Accordingly, I recommend the District Court dismiss Ground Two of the Petition.

**Grounds Three through Eight**

For the same reasons, Mr. Jennings has procedurally defaulted his claims in Grounds Three through Eight. He did not present these claims to the Ohio Supreme Court on direct appeal and Ohio's *res judicata* doctrine bars Mr. Jennings from now bringing those claims in the state courts. Mr. Jennings' statement that appellate counsel was ineffective for failing to assert those claims to the Ohio Supreme Court cannot establish cause to overcome procedural default because he did not assert any ineffective assistance claims relative to Grounds Three through Eight in the state courts, thereby rendering those claims themselves procedurally defaulted. Additionally, Mr. Jennings has not asserted manifest injustice will occur if the claims in Grounds Three through Eight are not considered, nor has he presented new evidence in support.

22

Procedural default notwithstanding, I discuss briefly the merits of each claim below.

*Ground Three*

**Whether the execution style killing of the victim by Mr. Peak was not foreseeable under Murder (B) of Ohio law and the manifest weight of the evidence mandates a new trial.** (ECF #1, PageID 6).

In the Sixth Circuit, when a federal *pro se* habeas petitioner makes a manifest weight of the evidence claim that has been presented to and adjudicated by the state courts, a rule of lenient construction of *pro se* pleadings applies such that the manifest weight claim is construed a challenge to the sufficiency of the evidence. *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. Dec. 14, 2007). Even so, the Eighth District itself construed Mr. Jennings' third assignment of error as challenging the sufficiency of the evidence, "in light of the fact that [Mr.] Jennings [did] not challeng[e] the credibility of witnesses but instead [] focus[ed] on the elements of the offense[.]" (ECF #6-1 at PageID 273; *Jennings*, 100 N.E.3d at 99).

Although federal habeas corpus relief generally does not lie for errors of state law, due process "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White,* 531 U.S. 225, 228-29 (2001). A district court may grant a writ of habeas corpus based on insufficiency of the evidence, *see Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006), where it finds that, after viewing the evidence in the light most favorable to the state, no rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of deference, as follows:

First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.

*White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009) (citations omitted). The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.

Mr. Jennings challenges the proximate cause element of Ohio's felony-murder statute, Ohio Rev. Code § 2903.02(B). Based on prior decisions interpreting similar language in Ohio's involuntary-manslaughter statute, the Ohio Second District Court of Appeals held that the felony-murder statute "adopt[s] a proximate cause standard of criminal liability." *State v. Dixon*, No. 18582, 2002 WL 191582, at *5 (Ohio Ct. App. 2002). In the last explained state court decision in this case, the Eighth District determined on direct appeal:

{¶ 21} The felony murder statute provides that "[n]o person shall cause the death of another as the proximate result of the offender's" committing an offense of violence. R.C. 2903.02. "Proximate result" is defined as the direct, natural, reasonably foreseeable consequence of one's action when viewed "in light of ordinary experience." *State v. Gibson*, 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372, ¶ 35, quoting *State v. Ervin*, 8th Dist. Cuyahoga No. 87333, 2006-Ohio-4498, and *State v. Dixon*, 2d Dist. Montgomery No. 18582, 2002-Ohio-541.

{¶ 22} Jennings and his co-conspirator attempted to rob the victims while armed with a handgun.

The natural inclination of persons present during a robbery to forcibly defend themselves, their family and friends, and their property from theft and criminal aggression is a primal human instinct. Every robber or burglar knows when he attempts his crime

24

> that he is inviting dangerous resistance. Add to this highly charged
> atmosphere the use of a firearm to facilitate the robbery, and the risk
> of serious physical harm or death to any person present, be it the
> intended victims, bystanders, or the wrongdoers themselves becomes
> highly foreseeable.
>
> *Dixon* at 18; *see also State v. Burt*, 8th Dist. Cuyahoga No. 99097, 2013-Ohio-3525,
> ¶ 25 (death would not have occurred but for defendant's acting in concert with the
> decedent in robbing the victim at gunpoint, who caused the death by defending
> himself). In this case, one of the victims shot Jennings's co-conspirator in self-defense.
> The co-conspirator's death was directly caused by the aggravated robbery in which
> Jennings willingly participated. Jennings's conviction was not against the sufficiency
> of the evidence.

(ECF #6-1 at PageID 274-75; *see also Jennings*, 100 N.E. 3d at 99).

To the Eighth District, Mr. Jennings acknowledged that the victim's first shot – which disabled but did not kill his co-conspirator, Waymone Williams – was in self-defense and was perhaps foreseeable, but argued that the fatal second and third shots were acts of vengeance. (ECF #6-1 at PageID 217-18). As such, he claimed Williams' death was not foreseeable. (*Id.*).

At trial, Tim Peak (the victim of the attempted robbery who shot Mr. Williams) testified that while sitting in his car with his passenger, Delana, two people dressed in black and wearing masks approached, opened the car door, pulled him out by his legs, and hit him over the head with a crowbar. (ECF #6-3, PageID 1277-78, 1280, 1282). Mr. Peak testified both individuals wore gloves. (*Id.* at PageID 1295). When Mr. Peak landed on his rear end, the open driver's door was immediately to his right. (*Id.* at PageID 1280). The two masked individuals stood side by side, one holding Mr. Peak at gunpoint with a revolver and the other holding an object like a pipe, crowbar, or tire iron. (*Id.* at PageID 1282-83). Mr. Peak feared for his life; he retrieved his own weapon from the pocket of the driver's side door and shot the person holding the revolver, later identified as Mr. Williams. (*Id.* at PageID 1284-1286). Mr. Williams, still holding his own revolver, fell

25

backward and the other person, Mr. Jennings, ran. (*Id.* at PageID 1287-88). As Mr. Peak was

standing up, Mr. Williams fired his revolver "up in the air." (*Id.* at PageID 1288). Now standing,

Mr. Peak fired a second shot, the effect of which caused Mr. Williams' revolver to fall. (*Id.* at

PageID 1289). Mr. Peak then fired a third shot in quick succession. (*Id.*). He explained that he

fired the second and third shots because Mr. Williams just shot at him and he was in fear for his

life. (*Id.* at PageID 1290-91). Mr. Peak next saw Mr. Jennings running around the house and his

passenger, Delana, on the ground. (*Id.* at PageID 1291-92). He ran to the side of the house, but

Mr. Jennings was gone. (*Id.* at PageID 1292).

Delana Whitmore, Mr. Peak's passenger, testified that when the two masked men

approached the car, she exited the car and ran towards the front door of the house. (ECF #6-2,

PageID 987). She was carrying a red purse at the time. (*Id.* at PageID 988). She made it to the front

door but was grabbed from behind and thrown down the concrete steps, landing on her back. (*Id.*

at PageID 991). From her position on the ground, she saw a person she described as "A little

husky, not skinny, black mask, gloves." (*Id.*). Her purse was next to her at the time. (*Id.* at PageID

992). The person grabbed her purse. (*Id.*). Mr. Jennings was placed at the scene through DNA

collected from a latex glove found outside of a fence adjoining Mr. Peak's yard. (*Id.* at PageID

1495, 1496, 1502, 1726).

Mr. Jennings cannot overcome the double layer of deference afforded on habeas claims

grounded in sufficiency of the evidence. First, after reviewing the trial testimony and exhibits in

the light most favorable to the state, I conclude any rational trier of fact could have found Mr.

Jennings guilty of felony murder. He and Mr. Williams willingly participated in an aggravated

robbery, a crime of violence. *See State v. Duncan*, No. 87220, 2006 WL 2777586, ¶ 10 (Ohio Ct.

26

App. 2006), *appeal not allowed*, 860 N.E.2d 769 (Ohio 2007) (table). After the two masked individuals pulled Mr. Peak from his car, they both stood over him holding weapons. Mr. Peak defended himself with his own gun, shooting Mr. Williams. While falling, Mr. Williams fired his weapon. In response to being fired upon, Mr. Peak stood over Mr. Williams and shot twice. At roughly the same time, Mr. Jennings took Delana's purse and fled. The relationship between Mr. Jennings' criminal conduct and Mr. Williams' death is not so remote or improbable as to be unforeseeable by any rational trier of fact.

Moreover, the Eighth District reasonably determined that, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found beyond a reasonable doubt that Mr. Williams' ~~death~~' death was a reasonably foreseeable consequence of Mr. Jennings' decision to participate in an aggravated robbery. Therefore, I conclude that Ground Three would fail even if not procedurally defaulted.

*Ground Four*

**Whether the admission of litigation records disguised as business records was in error and allowed improper hearsay to be considered by the jury in violation of the Evidence Rules and Due Process under the Sixth and Fourteenth Amendments of the federal Constitution and Article I, Section 10 of the Ohio Constitution.** (ECF #1, PageID 7).

Mr. Jennings argues that cell phone records admitted during his trial were not part of the cell phone company's day-to-day business but were records prepared in anticipation of litigation; therefore, he says, the cell phone records were not admissible under the hearsay exception for business records under Ohio Evidence Rule 803(6). (*See* ECF #6-1, PageID 220). Mr. Jennings reasons that because "the records cannot be accessed by anybody at the [cell] phone company"

27

without a court order and are not otherwise used by the company, the records are not part of the company's day-to-day business. (*Id.*).

> In the last explained state court decision, the Eighth District determined on direct appeal:

> {¶ 23} In his fourth assignment of error, in reliance on *State v. Hood,* 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶ 21, Jennings claims that cell phone records, admitted as business records, were actually prepared in anticipation of litigation because the cell-phone company only releases the records upon receiving a court order and not all employees have access to the private information. According to Jennings, if a business record is prepared in anticipation of litigation, the hearsay exception under Evid.R. 803(6) no longer applies. Jennings's reliance on *Hood* is misplaced. In that case, the Ohio Supreme Court held, in the context of the Confrontation Clause, that:

>> [e]ven when cell-phone companies, in response to a subpoena, prepare types of records that are not normally prepared for their customers, *those records still contain information that cell-phone companies keep in the ordinary course of their business.*

> (Emphasis added.) *Id.* at ¶ 36, citing *United States v. Yeley-Davis,* 632 F.3d 673, 679 (10th Cir. 2011). *Hood* resolved the conflict between what is admissible in general versus that which is admissible under the Confrontation Clause. *Hood* is inapplicable to Jennings's argument. He is not claiming any Confrontation Clause violation, and he has not otherwise provided authority in support of a claimed error as required by App.R.16(A)(7). The fourth assignment of error is overruled.

(ECF #6-1 at PageID 275; *see also Jennings* 100 N.E.3d at 99-100).

> Having reviewed the record of this proceeding, including the underlying trial court proceedings, I conclude Mr. Jennings has not overcome, by clear and convincing evidence, the presumption of correctness afforded a state court's factual determinations. He has not filed a Traverse or otherwise supported his Grounds for Relief. "With regard to evidentiary rulings, the standard for habeas relief is not easily met." *Wilson v. Sheldon,* 874 F.3d 470, 475 (6th Cir. 2017). "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell,* 268 F.3d 417, 439 (6th Cir. 2001). A federal court may grant relief

where "the state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due process violation." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012); *see also Seymour*, 224 F.3d at 552 (such rulings "are usually not to be questioned in a federal habeas corpus proceeding"). If a ruling is especially egregious and "results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). As described above, the petitioner bears the burden of showing a violation of a principle of fundamental fairness. "Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Wilson*, 874 F.3d at 476 (citing *Seymour*, 224 F.3d at 552) (cleaned up).

Mr. Jennings does not argue how admission at trial of the cell phone records in question was so egregious that it was fundamentally unfair. Therefore, even if Ground Four was not cognizable under federal habeas review, it would not justify the granting of habeas relief.

*Ground Five*

**Whether the trial court erred in denying a *Batson* challenge when it improperly applied the three-step process established by the U.S. Supreme Court.** (ECF #1, PageID 8-9).

In *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), the Supreme Court concluded that excusing a potential juror from sitting on a trial jury based solely on the juror's race violates the Equal Protection Clause. A *Batson* claim presents a mixed question of law and fact and "necessarily focuses on the reasonableness of the decisions of the state courts—that is, whether those decisions constituted an unreasonable application of Supreme Court precedent." *Braxton v. Gansheimer*, 561 F.3d 453, 458 (6th Cir. 2009).

In the last explained state court decision, the Eighth District determined on direct appeal:

29

{¶ 24} In the fifth assignment of error, Jennings argues that the trial court erred in denying a challenged under *Batson v. Kentucky* . . . . "In *Batson*, the United States Supreme Court established a three-step inquiry for trial courts to adjudicate claims of race-based challenges to jurors." *State v. Johnson*, 144 Ohio St. 3d 518, 2015-Ohio-4903, ¶ 21, 45 N.E.3d 208, citing *Batson* at 96. The three steps are (1) "a defendant must make a prima facie case that the prosecutor is engaged in racial discrimination"; (2) "if the defendant satisfies that burden, the prosecutor must provide a racially neutral explanation for the challenge"; and (3) "the court must decide, based on all the circumstances, whether the defendant has proved purposeful racial discrimination." *Id.,* citing *Batson* at 98.

{¶ 25} In order to make a prima facie case of discrimination, the defendant must demonstrate that members of the defendant's race were "substantially underrepresented on the venire from which his jury was drawn," or that the jury venire was "selected under a practice providing the opportunity for discrimination." *Batson* at 95.

{¶ 26} In this case, Jennings failed to make a prima facie case of discrimination. The record reflects that the prosecutor struck one juror of the same ethnicity as Jennings, but there is no record as to the racial composition of the venire. Without being able to make a prima facie case of racial discrimination, we need not consider the prosecutor's race-neutral explanation or the trial court's decision. Accordingly, Jennings's fifth assignment of error is overruled.

(ECF #6-1 at PageID 276-77; *see also Jennings*, 100 N.E.3d at 100).

While the Eighth District correctly identified the Supreme Court precedent that establishes the three-step process by which a trial court adjudicates claims of race-based challenges to jurors, its decision identified only one of several the ways in which a defendant may establish a prima facie case of discrimination. In *Batson,* the Supreme Court noted a defendant may establish a prima facie case of purposeful discrimination in the selection of the petit jury using only evidence as to the prosecutor's exercise of peremptory challenges at trial. *Batson*, 476 U.S. at 96. The Supreme Court explained:

To establish such a case, the defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory

challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Id.* (cleaned up).

At trial, defense counsel raised a *Batson* challenge to the state's dismissal of a Black juror. (ECF #6-2, PageID 661-62). Counsel for Mr. Jennings offered the following circumstances for the trial court's consideration:

> I think this juror answered all the questions in a way that would indicate that he could be fair and impartial and that he was open to following the judge's instructions if he was a juror in this case, and I don't see anything that he said that would cause him to be exempted by the State other than the fact that he's black.

(*Id.*). The trial court then prompted the prosecutor to respond. (*Id.* at PageID 662). The prosecutor explained that although the juror said he could follow the law with respect to felony murder, he did so in a manner that expressed his reservation to finding someone guilty under that legal theory. (*Id.*). Counsel for Mr. Jennings pointed out that the excused juror was not the only juror who expressed the same reservations. (*Id.* at PageID 662-63). The trial court denied Mr. Jennings' challenge and noted that the State "articulated enough reasons." (*Id.* at PageID 663).

The Eight District's finding that Mr. Jennings failed to establish a prima facie case of discrimination is incorrect under Supreme Court precedent. As the Court made clear in *Hernandez v. New York,* 500 U.S. 352, 359 (1991), "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court had ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Moreover, Supreme Court precedent also establishes that "a trial court's ruling on

31

the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Drain v. Woods,* 595 Fed. App'x 558, 572 (6th Cir. 2014).

Under § 2254(d), however, "a habeas court must determine what arguments or theories supported or could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision." *Harrington* 562 U.S. at 102. Here, another argument supports the Eighth District's decision denying the *Batson* challenge. According to the trial record, the court ultimately ruled on the issue of discriminatory intent. (ECF #6-2, PageID 663). Albeit in an abbreviated fashion, the trial court heard Mr. Jennings's allegation of race-based discrimination in the use of a preemptory challenge, received the prosecutor's race-neutral explanation for the challenge, and decided Mr. Jennings had not proved intentional racial discrimination. No fairminded jurist could disagree that the state court's decision to deny Mr. Jennings's *Batson* claim is consistent with precedent established by *Hernandez.* Mr. Jennings's *Batson* claim therefore fail on their merits even if not procedurally defaulted.

*Grounds Six and Seven*

**Ground Six: Whether the Court's failure to instruct on "Confirmation Bias" prevented Jennings from having a fair trial and Due Process under the Fourteenth Amendment of the federal Constitution and Art. I, Section 10 of the Ohio Constitution.**

**Ground Seven: Whether counsel was ineffective under the federal and Ohio Constitutions and the Sixth and Fourteenth Amendments of the federal Constitution/*Strickland* when no bias confirmation jury instruction was requested.** (ECF #1, PageID 10-11).

The Eighth District addressed Mr. Jennings' sixth and seventh the assignments of error together, stating:

{¶ 27} In the sixth and seventh assignments of error, Jennings contends that the jury instruction on "confirmation bias" was inadequate, or in the alternative, that his trial counsel was ineffective for failing to seek an instruction on "confirmation bias" altogether. Jennings has provided no authority requiring or even permitting such an instruction. His citations and arguments only define how some experts interpret and apply "confirmation bias." App.R. 16(A)(7). Appellate courts are not required to construct arguments on behalf of either party. We overrule both assignments of error.

(ECF #6-1 at PageID 277 (citation omitted); *see also Jennings*, 100 N.E.3d at 100).

Respondent claims: "This Court must also defer to the state appellate court's interpretations of Ohio law, including the determination that [Mr.] Jennings was not entitled to the requested jury instruction under Ohio law." (ECF #6 at PageID 75). But a careful reading of the Eighth District's decision reveals it did not address errors six and seven on the merits; rather, it overruled the assignments of error pursuant to Ohio Appellate Rule 16(A)(7). The Rule provides that an appellant "shall include in his brief ... [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to ... parts of the record on which appellant relies." Ohio App. R. 16(A)(7). Courts in this district have found Ohio Appellate Rule 16 to be an adequate and independent state rule upon which the state may foreclose federal habeas review. *See, e.g., Campbell v. Bunting,* No. 1:14CV1187, 2015 WL 4984871, at *8-9 (N.D. Ohio Aug. 19, 2015); *Johnson v. Bradshaw*, No. 1:03 CV 2509, 2006 WL 2945915, at *9-10 (N.D. Ohio Oct. 13, 2006).

I do not address the merits of Grounds Six and Seven because the claims were not evaluated on their merits by a state court. The procedural default doctrine bars review of federal claims that a state court has declined to address because a petitioner did not comply with a state procedural requirement. *Wainwright*, 433 U.S. at 87. In these cases, the state judgment is not based on a resolution of federal constitutional law, but instead "rests on independent and adequate state

procedural grounds." *Coleman*, 501 U.S. at 730. When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).

For these reasons, Grounds Six and Seven are subject to dismissal.

*Ground Eight*

**Whether the cumulative effects of the error in this case detailed In Assignment of Error I-VII denied Jennings a fair trial and Due Process under the Fourteenth Amendment of the federal Constitution and Article I, Section 10 of the Ohio Constitution. (ECF #1, PageID 12).**

In his last ground for relief, Mr. Jennings asserts he was deprived of his right to a fair trial due to the cumulative errors alleged in Grounds One through Seven. But 28 U.S.C. § 2254 limits relief to state prisoners who are being held in violation of federal constitutional law, and a federal court may only grant habeas relief if the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Cumulative error claims are not cognizable on habeas review because the Supreme Court has not addressed whether distinct constitutional claims can be cumulated to grant habeas relief. *Williams*, 460 F.3d at 816. Moreover, even if such a claim were cognizable on habeas review, if the claims making up the cumulative error claim are procedurally barred or without merit, the cumulative error claim "must also fail." *Ramsey v. Phillips*, 2020 WL 9423257, *3 (6th Cir. Nov. 4, 2020).

Accordingly, Ground Eight is also subject to dismissal.

**Certificate of Appealability**

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue ... only if the applicant has

made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to granting of a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Jennings has not made a substantial showing of the denial of a constitutional right. Reasonable jurists would not find the assessment of Mr. Jennings's claims debatable or wrong.

### CONCLUSION

Following review, and for the reasons stated above, I recommend the Petition for Writ of Habeas Corpus be **DENIED** as to the First Ground for Relief and **DISMISSED** as to all remaining Grounds for Relief. I further recommend Mr. Jennings not be granted a certificate of appealability.

Dated: July 6, 2022

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).